**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____ :

**WILLIAM SMART** :
: **C.A. NO.: 2:21-cv-00486-CDJ**
**Plaintiff** :
:
**v.** :
: **JURY TRIAL DEMANDED**
:
:
**PHOENIX LITHOGRAPHING** :
**CORPORATION** :
:
**THE PHOENIX GROUP** :
:
**INNOVATION MARKETING** :
**COMMUNICATIONS, LLC** :
:
**BARRY GREEN** :
**and** :
:
**STEPHEN ANELLO** :
:
**Defendants** :
_____ :

## FIRST AMENDED COMPLAINT

## I.    PRELIMINARY STATEMENT

Plaintiff, William Smart ("Plaintiff"), by and through his undersigned counsel, files this

Civil Action Complaint against his former employer, Defendants Phoenix Lithographing

Corporation, The Phoenix Group, Innovation Marketing Communications, LLC, and Barry Green

(collectively, "Defendants"). Plaintiff asserts discrimination and retaliation claims against

Defendants under the Americans with Disabilities Act, as amended, 42 U.S.C. §12101, *et seq.*,

("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"),

and the Philadelphia Fair Practices Ordinance, as amended, Phila. Code §9-1100, *et seq.* ("PFPO").

1

Plaintiff also asserts claims against Defendants, including individual Defendant Stephen Anello, under the Pennsylvania Wage Payment and Collection Law, 43 P.S. §206.1, *et seq.* ("WPCL"), and Pennsylvania common law for Defendants' misrepresentations and violations of their contractual and statutory obligations to Plaintiff in connection with his employment contract. Plaintiff also asserts post-employment retaliation claims under the ADA, PHRA, and PFPO against all named Defendants arising out of Defendants' frivolous counterclaim asserted in their Answer to Plaintiff's Complaint.

Plaintiff seeks all available damages, including economic loss, compensatory, liquidated, consequential, and punitive damages, in addition to all other relief under applicable federal and state law as this Court deems appropriate.

## II.    PARTIES

1.     Plaintiff, William Smart ("Plaintiff"), is an individual and citizen of the Commonwealth of Pennsylvania, residing therein in Downingtown, Pennsylvania.

2.     Defendant, Phoenix Lithographing Corporation, is a Pennsylvania corporation that is registered and licensed to do business in the Commonwealth of Pennsylvania, maintaining a principal place of business at 11631 Caroline Road, Philadelphia, Pennsylvania 19154.

3.     Defendant, The Phoenix Group, is upon information and belief a partnership comprised of numerous business entities that is registered and licensed to do business in the Commonwealth of Pennsylvania, with a principal place of business at 11631 Caroline Road, Philadelphia, Pennsylvania 19154.

4.     Defendant, Innovation Marketing Communications, LLC, is a Pennsylvania corporation that is registered and licensed to do business in the Commonwealth of Pennsylvania,

maintaining a principal place of business at 11601 Caroline Road, Philadelphia, Pennsylvania 19154.

5.      Defendant, Barry Green (hereinafter "Defendant Green"), is an individual and the Chief Executive Officer of Defendants Phoenix Lithographing Corporation, The Phoenix Group, and Innovation Marketing Communications, LLC. Defendant Green makes his principal place of business at 11631 Caroline Road, Philadelphia, Pennsylvania 19154.

6.      Defendant, Stephen Anello ("Defendant Anello"), is an individual and the Vice Chairman of Phoenix Lithographing Corporation. Defendant Anello makes his principal place of business at 11631 Caroline Road, Philadelphia, Pennsylvania 19154.

7.      Defendants Phoenix Lithographing Corporation, The Phoenix Group, and Innovation Marketing Communications, LLC (hereinafter collectively "Defendant Phoenix") are interconnected for purposes of the actions complained of herein such that they are considered Plaintiff's "single" and/or "joint" employer and/or enterprise.

8.      Defendant Phoenix has interrelated operations and collectively controlled Plaintiff's job duties and responsibilities.

9.      Defendants collectively caused the actions complained of herein.

10.     Defendant Phoenix collectively retained significant control over the terms and conditions of Plaintiff's employment.

11.     Defendant Phoenix is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

12.     At all times material hereto, Defendant Phoenix collectively employed more than fifteen (15) employees.

13.     At all times material to this action, Defendant Phoenix was an employer within the meanings of the state and federal laws which form the bases of this action.

14.     At all times material to this action, Plaintiff was an employee of Defendant Phoenix within the meanings of the state and federal laws which form the bases of this action.

15.     At all times material to this action, Defendant Phoenix acted by and through its authorized agents, servants, contractors and/or employees acting within the course and scope of their employment with Defendant Phoenix and in furtherance of Defendant Phoenix's various businesses.

## III.     JURISDICTION AND VENUE

16.     The causes of action set forth in this Complaint arise under the ADA, as amended, 42 U.S.C. §12101, *et seq.* (Count I-II); the PHRA, 43 P.S. §951, *et seq.* (Counts III-V); the PFPO, as amended, Phila. Code §9-1100, *et seq.* (Counts VI-VIII); Pennsylvania common law (breach of contract; fraudulent and negligent misrepresentation) (Count IX-XI); and the WPCL, 43 P.S. §206.1, *et seq.* (Count XII).

17.     The District Court has subject matter jurisdiction over Counts I-II (ADA) pursuant to 28 U.S.C. §1331.

18.     The District Court has supplemental jurisdiction over Counts III-V (PHRA); VI-VIII (PFPO); IX (breach of contract); X (fraudulent misrepresentation and concealment); XI (negligent misrepresentation and concealment); and XII (WPCL) pursuant to 28 U.S.C. §1367.

19.     Defendants are subject to the personal jurisdiction of this Court because, *inter alia*, the case arises out of or relates to the contacts of Defendants with the Commonwealth of Pennsylvania, the contacts of Defendants are continuous and systematic such that Defendants are at home in the Commonwealth of Pennsylvania, and/or Defendants have consented to personal

jurisdiction by personal service within the Commonwealth of Pennsylvania via an authorized agent of the corporation.

20.     Venue is proper under 28 U.S.C. § 1391(b).

21.     On or about February 14, 2020, Plaintiff dual filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"), complaining of the acts of discrimination and retaliation alleged herein.  Attached hereto, incorporated herein, and marked as Exhibit "A" is a true and correct copy of the EEOC Charge of Discrimination with minor redactions for purposes of electronic filing of confidential and personal identifying information.

22.     On or about November 6, 2020, the EEOC issued to Plaintiff a Dismissal and Notice of Right to Sue. Attached hereto and marked as Exhibit "B" is a true and correct copy of that Notice with minor redactions for purposes of electronic filing of confidential and personal identifying information.

23.     On or about April 26, 2021, Plaintiff dual filed a second Charge of Discrimination with the EEOC and PHRC, complaining of the post-employment retaliation alleged herein. Attached hereto, incorporated herein, and marked as Exhibit "D" is a true of correct copy of this EEOC Charge of Discrimination with minor redactions for purposes of electronic filing of confidential and personal identifying information.

24.     On or about May 20, 2021, the EEOC issued to Plaintiff a Dismissal and Notice of Right to Sue with respect to his second Charge of Discrimination. Attached hereto and marked as Exhibit "E" is a true and correct copy of that Notice with minor redactions for purposes of electronic filing of confidential and personal identifying information.

25.     Plaintiff has complied with all administrative requirements for the institution of this civil action.

## IV.    FACTUAL ALLEGATIONS SUPPORTING CLAIMS

### *Plaintiff's Employment Contract with Defendant Phoenix*

26.     Defendant Phoenix is a collection of commercial printing companies principally located in Philadelphia. Defendant Phoenix produces commercial printing products for various companies in the pharmaceutical, telecommunications, arts, and retail industries, among others.

27.     Plaintiff is a commercial printing executive with over 40 years of related experience in the industry.

28.     Over the course of his career, Plaintiff has held key leadership positions in various private and publicly held commercial printing companies in the areas of direct sales, sales management, operations management, and general management.

29.     Prior to his employment with Defendant Phoenix, Plaintiff was a long-term, highly successful salesman for a national commercial printing company called Cenveo, which in 2016 had over 7,000 employees and more than $1.5 billion in gross revenue.

30.     During his last five full years of employment with Cenveo (2012-2017), Plaintiff earned an average of approximately $1,000,000 per year. In 2017, his final full year with Cenveo, Plaintiff earned over $1,100,000 in total income. In 2018, Plaintiff was on track to earn over $1,300,000.

31.     In or about early 2018, Defendant Green began to recruit Plaintiff to leave Cenveo and join Defendant Phoenix as a commercial printing sales executive.

32.     During this recruitment process, which lasted approximately nine months, Plaintiff had several discussions with Defendant Green and other executives of Defendant Phoenix about the specific terms and conditions of Plaintiff's potential employment with Defendant Phoenix.

33.     During many of those discussions, Plaintiff informed Defendant Green of his high compensation rate at Cenveo and showed Defendant Green documentary proof of his income and supporting sales record with Cenveo.

34.     Plaintiff also made it clear to Defendant Green that he would not take the financial risk of moving from Cenveo to Defendant Phoenix unless Defendants would agree to pay him a guaranteed annual salary for a definite term of years.

35.     During the contract negotiations, Defendant Green also informed Plaintiff that upon joining Phoenix, Plaintiff would assume primary responsibility over Defendant Phoenix's client account with Comcast. In particular, Defendant Green promised Plaintiff a sales leadership position over the print and direct mail components of Defendant Phoenix's Comcast account, which, according to Defendant Green, accounted for millions of dollars in sales revenue every year.

36.     As early as June 2018, Plaintiff began to memorialize for Defendant Green, in writing, the proposed terms and conditions of his potential employment transition from Cenveo to Defendant Phoenix.

37.     Those terms included written sales goals for Plaintiff's first three years of employment with Defendant Phoenix, as well as a "Compensation Requirement" of a "3 year guarantee" and a "3 Year Commitment" of $1,000,000 per year that was not contingent on Plaintiff making any minimum amount of sales during the first three years.

38.     The terms also included 1% commission on all sales generated by salespersons recruited by Plaintiff to also join Defendant Phoenix, in addition to a signing bonus commensurate with any commissions Plaintiff would be required to relinquish by virtue of leaving Cenveo.

39.     After a series of further negotiations, in or about August 2018, Defendant Green ultimately agreed with Plaintiff to these proposed employment terms, including an agreement to a three-year contract with a guaranteed compensation rate of $1,000,000 per year.

40.     Defendant Green then asked Plaintiff to draft the agreed-upon terms into a written contract proposal as if authored by Defendant Green. In this initial written proposal, dated August 24, 2018, Plaintiff wrote the following, in relevant part, which reflected his agreement with Defendant Green:

> "During your first thirty-six (36) months of employment, you will receive a non-recoverable draw of $83,333.00 per month of $1,000,000.00 annual in accordance with the payroll practices of Phoenix Lithographing Corp. Following your initial thirty-six (36) months, your draw will become recoverable against commissions and may be adjusted based on sales at that time. While on the non-recoverable draw, you will be eligible to earn commission once your annual draw has been satisfied."

41.     Plaintiff's August 24, 2018 contract proposal also included terms regarding, without limitation, payment of 1% commission on all sales generated by salespersons recruited by Plaintiff to join Defendant Phoenix, employee benefits, COBRA and 401(k) eligibility, vacation time, and offers of employment to two of Plaintiff's administrative employees at Cenveo.

42.     Upon reading Plaintiff's initial August 24, 2018 contract proposal, Defendant Green informed Plaintiff that he would agree to these terms on behalf of Defendant Phoenix, but that he wanted the terms to be in simpler language.

43. Accordingly, Plaintiff presented a revised contract proposal to Defendant Green on or about August 28, 2018 with the same essential terms, albeit now in a simpler, bullet-point format.

44. This revised contract contained the essential terms and conditions of Plaintiff's employment with Defendant Phoenix and included a guaranteed three-year term of employment in addition to a guaranteed annual compensation rate of $1,000,000 per year.

45. The revised contract also included the same terms regarding payment of 1% commission on all sales generated by salespersons recruited by Plaintiff to join Defendant Phoenix, payment of a signing bonus commensurate with any commissions Plaintiff would be required to relinquish by virtue of leaving Cenveo, and provision of certain employee benefits.

46. On or about September 5, 2018, Plaintiff executed this version of the contract with Defendant Phoenix (hereinafter "the September 5, 2018 Employment Contract"). (*See* a true and correct copy of the fully executed September 5, 2018 Employment Contract, attached hereto as "Exhibit C").

47. Later that day, Defendant Green counter-executed the September 5, 2018 Employment Contract with Plaintiff on behalf of Defendant Phoenix. (*See* Exhibit C).

48. Plaintiff did not commence employment with Defendant Phoenix until on or about October 1, 2018.

49. Shortly after Plaintiff commenced employment, Plaintiff learned that Defendant Green had made false representations to him during contract negotiations with respect to the status of Defendant Phoenix's Comcast account. With the exception of a very minor segment of Comcast's commercial printing business (the "Install Kit" segment), Defendant Phoenix had lost

every other aspect of its client account with Comcast (including the print and direct mail components) prior to Plaintiff commencing employment with Defendant Phoenix.

50.     Defendants fraudulently misrepresented and concealed from Plaintiff that Defendant Phoenix had already lost the majority of its Comcast account during contract negotiations with Plaintiff.

51.     Defendants made these false misrepresentations and concealed from Plaintiff this fact with the intent of misleading Plaintiff and to induce justifiable reliance by Plaintiff and/or under circumstances in which Defendants ought to have known their falsity and in failure to exercise reasonable care in supplying that information to Plaintiff, resulting in Plaintiff resigning from Cenveo and ultimately joining Defendant Phoenix.

***Plaintiff's Cancer Diagnosis***

52.     At all times during his employment with Defendant Phoenix, Plaintiff held the position of Vice President of New Business Development.

53.     At all times during his employment with Defendant Phoenix, Plaintiff reported directly to Defendant Green.

54.     Several months after he began working for Defendant Phoenix, in April 2019, Plaintiff was diagnosed with squamous cell carcinoma cancer of the head and neck. At that time, Plaintiff's cancer was found to be in his left tonsil and lymph nodes.

55.     Plaintiff's cancer diagnosis constitutes a disability within the meaning of the Americans with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practice Ordinance ("PFPO"), in that it substantially impaired one or more of Plaintiff's major life activities.

56.     In or about late May 2019, Plaintiff informed Defendant Green and Defendant Stephen Anello ("Defendant Anello"), Defendant Phoenix's Vice Chairman, of his cancer diagnosis. During that meeting, Plaintiff also informed them that he would be undergoing a series of complex surgeries to remove his tumors and reconstruct his throat in June 2019 and would require, as a reasonable accommodation, time off from work thereafter to recover.

57.     On or about June 10, 2019, Plaintiff underwent the said cancer surgeries.

58.     On or about June 11, 2019, due to post-surgery related complications, Plaintiff underwent an emergency surgery on his throat due to a post-operative hemorrhage. Plaintiff remained in the hospital for another eight days to recover. Due to the severe and invasive nature of these cancer surgeries, Plaintiff underwent a subsequent tracheostomy to assist his breathing, in addition to a surgical insertion of a feeding tube.

59.     Following a period of recovery, Plaintiff returned to full-time work in or about July 2019.

60.     Thereafter and continuing until the termination of his employment, Defendants, including Defendant Green, engaged in a pattern of discrimination and retaliation against Plaintiff based on his disability and requests for reasonable accommodations.

61.     By way of example, when Plaintiff returned to work, Defendant Green began harassing Plaintiff about his compensation, calling him a "financial drain" on the company. Defendant Green also began demanding that Plaintiff volunteer to take a pay-cut.

62.     On or about July 31, 2019, Plaintiff commenced proton radiation therapy as a form of preventative treatment for his cancer. Plaintiff's radiation therapy regimen was for five continuous weeks, with individual treatment sessions occurring five days per week on weekdays.

Plaintiff scheduled the individual therapy sessions in the evenings in an effort to minimize interference with his work schedule.

63.     At all times relevant hereto, Defendants were fully aware of Plaintiff's proton radiation therapy regimen and the corresponding effect it had on Plaintiff's ability to swallow and speak.

64.     Plaintiff specifically requested that Defendant Green not schedule meetings with him at the end of the day due to his radiation treatment schedule. Defendant Green refused to provide Plaintiff this reasonable accommodation and continued to set meetings for the end of the day, which often interfered with Plaintiff's radiation treatments at the University of Pennsylvania Hospital.

65.     In early August 2019, shortly after Plaintiff commenced proton radiation treatment, Defendants Green and Anello confronted Plaintiff in hostile fashion, again called Plaintiff a "financial drain" on the company, falsely accused Plaintiff of not hitting his sales goals, and demanded that Plaintiff prepare a written proposal to reduce his compensation. In this particular interaction, which occurred in the late afternoon on a Friday directly before one of Plaintiff's scheduled radiation treatments, Defendants Green and Anello's discriminatory harassment of Plaintiff was so distressing that it caused Plaintiff to experience difficulty in breathing a few hours later during his radiation treatment.

66.     A few days later, Plaintiff presented his sales figures and other evidence to Defendant Green to prove that despite his recent cancer diagnosis, related surgeries, and their combined effect on his health, Plaintiff was still performing at a high level and meeting his profitability goals for Defendant Phoenix. In response, Defendant Green largely ignored what Plaintiff was saying and continued to insist that Plaintiff take a substantial pay-cut.

67.     On or about August 9, 2019, Ken Marino ("Marino"), Defendant Phoenix's President, stated that Plaintiff could "no longer ignore" Defendant Green's demand that he agree to a drastic reduction in compensation. Marino then suggested a $600,000 pay decrease to a reduced total of $400,000 per year, which Plaintiff said he would not agree to.

68.     Five days later, on or about August 14, 2019, Marino instructed Plaintiff to agree to reduce his salary in order to remain employed by Defendant Phoenix. Marino then told Plaintiff that Defendant Green was "offering $333,000" per year, but thought that if Plaintiff "cooperated", Marino could talk Defendant Green into paying Plaintiff $400,000 per year. Plaintiff told Marino he would not consider such a drastic reduction to his compensation.

69.     On or about August 16, 2019, Defendant Green, Defendant Anello, and Marino called a meeting with Plaintiff at the end of the day, during which they asked whether Plaintiff had created a proposal to reduce his salary. Plaintiff stated he had not and was not considering it. Plaintiff again showed Defendant Green, Defendant Anello, and Marino documentation that indicated he had actually established a higher sales profit margin than originally anticipated during his first year of employment and was, despite his cancer diagnosis, still performing at a very high level. Defendant Green, Anello, and Marino again ignored what Plaintiff was saying and showing them and continued to insist that Plaintiff voluntarily accept a pay-cut.

70.     On or about August 19, 2019, Defendant Green, Anello, and Marino held another meeting with Plaintiff during which they again asked Plaintiff to make a proposal to reduce his salary. Plaintiff informed them again that he would not do so.

71.     The following day, on or about August 20, 2019, Marino approached Plaintiff in his office with an ultimatum from Defendant Green: accept a $600,000 pay decrease to a salary of $400,000 and an involuntary reassignment of one of Plaintiff's largest client accounts, or face

termination. Plaintiff informed Marino that he would not accept this proposal. Marino then terminated Plaintiff's employment, effective that day.

72.     August 20, 2019 was a particularly hot and humid day in Philadelphia, with temperatures reaching a high of 91 degrees. After he terminated Plaintiff's employment, Marino told Plaintiff to pack his belongings immediately (which included furniture, several heavy boxes of personal items, and computer equipment) and leave the premises. Due to his weakened physical state caused by ongoing radiation treatment, Plaintiff asked two other employees to help him carry his belongings from his second-floor office to his car. Defendant Green, upon seeing this, instructed those employees to stop helping Plaintiff. Plaintiff was then forced to call his wife for assistance.

73.     Upon information and belief, Defendants replaced Plaintiff with non-disabled employees and/or disseminated Plaintiff's job duties and sales accounts to non-disabled employees.

74.     Defendant Green aided, abetted, incited, compelled and/or coerced the discrimination and retaliation to which Plaintiff was subjected during his employment with Defendant Phoenix.

75.     Plaintiff's disability, including his record of disability and Defendants' regarding him as disabled, was a motivating and/or determinative factor in connection with Defendants' discriminatory treatment of Plaintiff, including the termination of Plaintiff's employment.

76.     Plaintiff's requests for reasonable accommodations were motivating and/or determinative factors in connection with Defendants' discriminatory and retaliatory treatment of Plaintiff, including the termination of Plaintiff's employment.

77.     As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

78.     Defendants acted with malice, reckless indifference, and/or deliberate indifference to Plaintiff's protected rights.

***Defendant Phoenix's Termination of Plaintiff's Employment Constituted a Material Breach of the September 5, 2018 Employment Contract***

79.     Pursuant to the September 5, 2018 Employment Contract, Defendant Phoenix was obligated to pay Plaintiff a total of $3,000,000 in guaranteed compensation throughout a definite three-year term set to conclude on or about October 1, 2021.

80.     As of August 20, 2019, the date it terminated Plaintiff's employment, Defendant Phoenix had only paid Plaintiff a total of $882,884.18 under the September 5, 2018 Employment Contract.

81.     Defendant Phoenix terminated Plaintiff's employment more than two years before the agreed-upon conclusion of the September 5, 2018 Employment Contract's term and did not pay the remaining amounts owed to Plaintiff.

82.     Defendant Phoenix materially breached the September 5, 2018 Employment Contract by terminating Plaintiff's employment prior to the conclusion of the three-year term and not paying Plaintiff the remainder of amounts owed to him.

83.     As a result of Defendant Phoenix's material breach, Plaintiff has suffered and will in the future suffer damages in the amount of approximately $2,117,115.82 at minimum (not

including interest), which constitutes the approximate remainder of guaranteed salary owed to Plaintiff for the September 5, 2018 Employment Contract term.

84.     As a result of Defendant Phoenix's material breach, Plaintiff has also suffered the lost monetary value of employee benefits owed, in addition to unpaid vehicular and sales expense allowances, for the remainder of the September 5, 2018 Employment Contract term.

85.     Defendant Phoenix also materially breached the September 5, 2018 Employment Agreement by not paying Plaintiff a signing bonus of approximately $180,000, which represents the approximate amount of commission income Plaintiff had to relinquish at Cenveo to join Defendant Phoenix.

86.     Defendant Phoenix further materially breached the September 5, 2018 Employment Agreement by not paying Plaintiff 1% commission on all sales generated by Eric Call, a salesman who Plaintiff successfully recruited from Cenveo to join Defendant Phoenix in or about September 2018.

87.     As a result of Defendant Phoenix's material breaches of the September 5, 2018 Employment Agreement, Plaintiff has also suffered consequential damages in addition to lost future income and opportunity.

88.     Defendants have also violated the WPCL because Plaintiff did not receive his established contracted compensation due to him under the September 5, 2018 Employment Contract.

### *Defendants' Retaliatory Counterclaim*

89.     On February 2, 2021, Plaintiff filed a civil action complaint against Defendants in Eastern District of Pennsylvania, asserting, among other claims, the disability discrimination claims alleged in Plaintiff's initial EEOC Charge of Discrimination. (ECF 1) (E.D. Pa.; Civ. No.

2:21-cv-00486-CDJ).

90.     Plaintiff's civil action complaint constituted protected activity under the ADA, PHRA, and PFPO.

91.     On April 12, 2021, Defendants filed their answer to Plaintiff's civil action complaint. (ECF 8).

92.     In their answer, Defendants asserted a baseless counterclaim against Plaintiff for an alleged breach of fiduciary duty/ duty of loyalty.

93.     Defendants' counterclaim rests on the unfounded allegation that Plaintiff "acted in direct competition" with Defendants' business by diverting a "large printing job for a consumer products company to a competitor of Phoenix."

94.     Defendants' allegations against Plaintiff are false.

95.     Defendants filed the counterclaim against Plaintiff in bad faith.

96.     Plaintiff never acted "in direct competition" with Defendants; nor did he wrongfully divert business from Phoenix to a competitor.

97.     Defendants' assertion of this counterclaim against Plaintiff constitutes retaliation for Plaintiff's complaints of Defendants' discriminatory conduct and his prosecution of same.

98.     Defendants' counterclaim is frivolous and filed as a sole result of Plaintiff's assertion of his protected statutory rights.

99.     Defendants asserted this counterclaim against Plaintiff to retaliate against and punish him for having engaged in protected activity under the ADA, PHRA, and PFPO.

100.    Defendants' actions would cause reasonable people, like Plaintiff, who have had their civil rights violated, to be deterred from filing claims under the ADA, PHRA, and PFPO.

101.    The bad faith assertion of a frivolous counterclaim has caused Plaintiff injury, including, but not limited to, mental distress, anguish, and professional and reputational damage.

102.    Defendants Green and Anello have aided, abetted, coerced, and/or incited this post-employment retaliation to which Plaintiff has now been subjected.

103.    Defendants acted with malice, reckless indifference, and/or deliberate indifference to Plaintiff's protected rights in filing a retaliatory counterclaim against him.

## COUNT I – ADA
### (Disparate Treatment)
**Plaintiff v. Defendants Phoenix Lithographing Corporation; The Phoenix Group; and Innovation Marketing Communications, LLC**

104.    Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

105.    Plaintiff's disability was a substantial, motivating, and/or determinative factor in connection with Defendant Phoenix's treatment of him.

106.    Plaintiff's requests for accommodation were a substantial, motivating, and/or determinative factor in connection with Defendant Phoenix's treatment of him.

107.    By committing the foregoing acts of discrimination against Plaintiff, including, without limitation, retaliating against Plaintiff for requesting reasonable accommodations and/or terminating his employment, Defendant Phoenix has violated the ADA.

108.    As a direct and proximate result of Defendant Phoenix's violation of the ADA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Phoenix's discriminatory acts unless and until this Court grants the relief requested herein.

109.    Defendant Phoenix acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and their conduct warrants the imposition of punitive damages.

### COUNT II – ADA
### (Retaliation)
**Plaintiff v. Defendants Phoenix Lithographing Corporation; The Phoenix Group; and Innovation Marketing Communications, LLC**

110.    Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

111.    In their answer to Plaintiff's civil action complaint, Defendants asserted a baseless counterclaim against Plaintiff for an alleged breach of fiduciary duty/ duty of loyalty.

112.    Defendants' allegations in the counterclaim are false.

113.    Defendants' assertion of this counterclaim against Plaintiff constitutes retaliation for Plaintiff's complaints of Defendants' discriminatory conduct and his prosecution of same.

114.    Defendants' counterclaim is frivolous and filed as a sole result of Plaintiff's assertion of his protected statutory rights.

115.    In filing the counterclaim against Plaintiff, Defendants have sought to punish Plaintiff for engaging in protected activity and to deter others from acting similarly.

116.    Defendants' actions would cause reasonable people, like Plaintiff, who have had their civil rights violated, to be deterred from filing discrimination claims.

117.    By committing the foregoing acts of retaliation against Plaintiff, Defendant Phoenix has violated the ADA.

118.    As a direct and proximate result of Defendant Phoenix's violation of the ADA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary

damages as a result of Defendant Phoenix's retaliatory acts unless and until this Court grants the relief requested herein.

119.    Defendant Phoenix acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and their conduct warrants the imposition of punitive damages.

## COUNT III - PHRA
### (Disparate Treatment)
**Plaintiff v. Defendants Phoenix Lithographing Corporation; The Phoenix Group; and Innovation Marketing Communications, LLC**

120.    Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

121.    Plaintiff's disability was a substantial, motivating, and/or determinative factor in connection with Defendant Phoenix's treatment of him.

122.    Plaintiff's requests for accommodation were a substantial, motivating, and/or determinative factor in connection with Defendant Phoenix's treatment of him.

123.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, including, without limitation, retaliating against Plaintiff for requesting reasonable accommodations and/or terminating his employment, Defendant Phoenix has violated the PHRA.

124.    As a direct and proximate result of Defendant Phoenix's violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

125.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Phoenix's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

**COUNT IV - PHRA**
**(Retaliation)**
**Plaintiff v. Defendants Phoenix Lithographing Corporation; The Phoenix Group;**
**and Innovation Marketing Communications, LLC**

126.    Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

127.    In their answer to Plaintiff's civil action complaint, Defendants asserted a baseless counterclaim against Plaintiff for an alleged breach of fiduciary duty/ duty of loyalty.

128.    Defendants' allegations in the counterclaim are false.

129.    Defendants' assertion of this counterclaim against Plaintiff constitutes retaliation for Plaintiff's complaints of Defendants' discriminatory conduct and his prosecution of same.

130.    Defendants' counterclaim is frivolous and filed as a sole result of Plaintiff's assertion of his protected statutory rights.

131.    In filing the counterclaim against Plaintiff, Defendants have sought to punish Plaintiff for engaging in protected activity and to deter others from acting similarly.

132.    Defendants' actions would cause reasonable people, like Plaintiff, who have had their civil rights violated, to be deterred from filing discrimination claims.

133.    By committing the foregoing acts of retaliation against Plaintiff, Defendant Phoenix has violated the PHRA.

134.    As a direct and proximate result of Defendant Phoenix's violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Phoenix's retaliatory acts unless and until this Court grants the relief requested herein.

135.    Defendant Phoenix acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and their conduct warrants the imposition of punitive damages.

## COUNT V - PHRA
### (Aiding and Abetting)
### Plaintiff v. Defendants Barry Green and Stephen Anello

136.    Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

137.    Defendants Green and Anello willfully and knowingly aided, abetted, incited, compelled and/or coerced Defendant Phoenix in the discrimination and retaliation to which Plaintiff was subjected.

138.    Defendants Green and Anello knowingly gave substantial assistance and/or encouragement to the unlawful acts of discrimination and retaliation of Defendant Phoenix towards Plaintiff.

139.    Defendants Green and Anello, by committing the foregoing acts of discrimination and retaliation, has violated the PHRA.

140.    Said violations were intentional and willful.

141.    As a direct and proximate result of Defendant Green and Anello's violations of the PHRA, Plaintiff has sustained the injuries, damages and losses set forth herein.

142.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Green and Anello's discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

## COUNT VI - PFPO
### (Disparate Treatment)
### Plaintiff v. Defendants Phoenix Lithographing Corporation; The Phoenix Group;
### and Innovation Marketing Communications, LLC

143.    Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

144.    Plaintiff's disability was a substantial, motivating, and/or determinative factor in connection with Defendant Phoenix's treatment of him.

145.    Plaintiff's requests for accommodation were a substantial, motivating, and/or determinative factor in connection with Defendant Phoenix's treatment of him.

146.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, including, without limitation, retaliating against Plaintiff for requesting reasonable accommodations and/or terminating his employment, Defendant Phoenix has violated the PFPO.

147.    As a direct and proximate result of Defendant Phoenix's violation of the PFPO, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

148.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Phoenix's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

149.    Defendant Phoenix acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and their conduct warrants the imposition of punitive damages.

<u>**COUNT VII - PFPO**</u>
**(Retaliation)**
**Plaintiff v. Defendants Phoenix Lithographing Corporation; The Phoenix Group;
and Innovation Marketing Communications, LLC**

150.    Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

151.    In their answer to Plaintiff's civil action complaint, Defendants asserted a baseless counterclaim against Plaintiff for an alleged breach of fiduciary duty/ duty of loyalty.

152.    Defendants' allegations in the counterclaim are false.

153.    Defendants' assertion of this counterclaim against Plaintiff constitutes retaliation for Plaintiff's complaints of Defendants' discriminatory conduct and his prosecution of same.

154.    Defendants' counterclaim is frivolous and filed as a sole result of Plaintiff's assertion of his protected statutory rights.

155.    In filing the counterclaim against Plaintiff, Defendants have sought to punish Plaintiff for engaging in protected activity and to deter others from acting similarly.

156.    Defendants' actions would cause reasonable people, like Plaintiff, who have had their civil rights violated, to be deterred from filing discrimination claims.

157.    By committing the foregoing acts of retaliation against Plaintiff, Defendant Phoenix has violated the PFPO.

158.    As a direct and proximate result of Defendant Phoenix's violation of the PFPO, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Phoenix's retaliatory acts unless and until this Court grants the relief requested herein.

159.    Defendant Phoenix acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and their conduct warrants the imposition of punitive damages.

### COUNT VIII - PFPO
**(Aiding and Abetting)**
**Plaintiff v. Defendants Barry Green and Stephen Anello**

160.    Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

161.    Defendants Green and Anello willfully and knowingly aided, abetted, incited, compelled and/or coerced Defendant Phoenix in the discrimination and retaliation to which Plaintiff was subjected.

162.    Defendants Green and Anello knowingly gave substantial assistance and/or encouragement to the unlawful acts of discrimination and retaliation of Defendant Phoenix towards Plaintiff.

163.    Defendants Green and Anello, by committing the foregoing acts of discrimination and retaliation, has violated the PFPO.

164.    Defendants Green and Anello acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and their conduct warrants the imposition of punitive damages.

165.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Green and Anello's discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

## COUNT IX – Breach of Contract
### Plaintiff v. Defendants Phoenix Lithographing Corporation; The Phoenix Group; and Innovation Marketing Communications, LLC

166.    Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

167.    The September 5, 2018 Employment Contract constitutes a valid and enforceable contract between Plaintiff and Defendant Phoenix and is supported by adequate legal consideration.

168.    By its actions in terminating Plaintiff's employment prior to the expiration of the guaranteed three-year term, and by its failure to pay amounts due to Plaintiff, Defendant Phoenix is in material breach of the September 5, 2018 Employment Contract.

169.    Plaintiff is entitled to all compensation and the monetary value of lost benefits that he would have received had Defendant Phoenix not materially breached the September 5, 2018 Employment Contract.

170.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary and consequential damages as a result of Defendant Phoenix's material breach of the September 5, 2018 Employment Contract unless and until this Court grants the relief requested herein.

## COUNT X – Fraudulent Misrepresentation and Concealment
**Plaintiff v. Defendants Phoenix Lithographing Corporation; The Phoenix Group; Innovation Marketing Communications, LLC; and Barry Green**

171.    Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

172.    Defendants fraudulently misrepresented and concealed facts material to the transaction at hand.

173.    Defendants fraudulently misrepresented and concealed from Plaintiff the true status of its client account with Comcast during Plaintiff's employment contract negotiations.

174.    Defendants made these false misrepresentations and concealed from Plaintiff these facts with the intent of misleading Plaintiff and to induce justifiable reliance by Plaintiff resulting in him resigning from Cenveo and joining Defendant Phoenix.

175.    Defendants' conduct is outrageous under the circumstances and warrants the imposition of punitive damages.

176.    As a direct result of Defendants' tortious conduct, Plaintiff has suffered economic and compensatory damages.

## COUNT XI – Negligent Misrepresentation and Concealment
**Plaintiff v. Defendants Phoenix Lithographing Corporation; The Phoenix Group;
Innovation Marketing Communications, LLC; and Barry Green**

177.    Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

178.    Defendants misrepresented and concealed from Plaintiff the true status of its client account with Comcast during Plaintiff's employment contract negotiations.

179.    Defendants made these misrepresentations and concealed these material facts from Plaintiff under circumstances in which Defendants ought to have known of their falsity and in failure to exercise reasonable care in supplying the information to Plaintiff.

180.    Defendants made these misrepresentations and concealed material facts from Plaintiff with the intent of misleading Plaintiff and to induce justifiable reliance by Plaintiff resulting in him resigning from Cenveo and joining Defendant Phoenix.

181.    As a direct result of Defendants' tortious conduct, Plaintiff has suffered economic and compensatory damages.

## COUNT XII – WPCL
**Plaintiff v. All Defendants**

182.    Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

183.    The September 5, 2018 Employment Contract established contractual employment with Plaintiff.

184.    Both Plaintiff and Defendants accepted the terms of the September 5, 2018 Employment Contract via its execution on September 5, 2018.

185.    Defendants violated the WPCL by refusing to pay Plaintiff the contractually owed amounts.

186.     Because there is no good faith dispute that the sums owed to Plaintiff are due and owing, under Section 260.10 of the WPCL, Plaintiff is entitled to recover liquidated damages against Defendant in an amount equal to twenty-five percent (25%) of the sums owed to him, or $500, whichever is greater.

187.     Under Section 260.9(a)(f) of the WPCL, if Plaintiff is successful in obtaining a judgment against Defendants, this Court is required to award Plaintiff his costs and reasonable attorneys' fees incurred in litigating this action.

## RELIEF

**WHEREFORE**, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' unlawful conduct, and specifically prays that this Court grant him the following relief by:

(a)     declaring the acts and practices complained of herein to be in violation of the ADA;

(b)     declaring the acts and practices complained of herein to be in violation of PHRA;

(c)     declaring the acts and practices complained of herein to be in violation of the PFPO;

(d)     declaring the acts and practices complained of herein to be in violation of Pennsylvania common law;

(e)     declaring the acts and practices complained of herein to be in violation of the WPCL;

(f)     enjoining and permanently restraining the violations alleged herein;

(g)     entering judgment against Defendants and in favor of Plaintiff in an amount to be determined;

(h)     awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result

of Defendants' unlawful conduct;

(i)      awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(j)      awarding punitive damages to Plaintiff;

(k)      awarding liquidated damages to Plaintiff under the WPCL;

(l)      awarding consequential damages to Plaintiff;

(m)      awarding damages in the owed amounts to Plaintiff under the September 5, 2018 Employment Contract, including interest, liquidated damages, and post-judgment interest at the legal rate;

(n)      awarding Plaintiff such other damages as are appropriate under the ADA, PHRA PFPO, WPCL, and Pennsylvania common law;

(o)      awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

(p)      granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury.

CONSOLE MATTIACCI LAW LLC

By: /s/ Brian Farrell
Stephen G. Console, Esquire
Laura C. Mattiacci, Esquire
Brian Farrell, Esquire
Console Mattiacci Law LLC
1525 Locust Street, Ninth Floor

Philadelphia, PA 19102
(215) 545-7676
(215) 565-2851 (fax)
console@consolelaw.com
mattiacci@consolelaw.com
farrell@consolelaw.com
Attorney for Plaintiff, William Smart

Date: July 26, 2021

## CERTIFICATE OF SERVICE

I, Brian C. Farrell, Esquire, hereby certify that on July 26, 2021, I served Plaintiff's First Amended Complaint, along with all accompanying exhibits, via the Court's CM/ECF System on the following:

Christina M. Michael, Esquire
FISHER & PHILLIPS LLP
Two Logan Square
100 N. 18th Street, 12th Floor
Philadelphia, PA 19103
(610) 230-2150 (telephone)
cmichael@fisherphillips.com

Alfred W. Putnam, Esquire
Daniel H. Aiken, Esquire
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
(215) 988-2942 (telephone)
alfred.putnam@faegredrinker.com
daniel.aiken@faegredrinker.com

*Counsel for Defendants*

/s/ Brian C. Farrell
Brian C. Farrell, Esquire

July 26, 2021

Exhibit "A"

| CHARGE OF DISCRIMINATION | | AGENCY<br>FEPA<br>X EEOC | CHARGE NUMBER |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | | | |

| STATE OR LOCAL AGENCY: Pennsylvania Human Relations Commission | | |
|---|---|---|

| NAME (Indicate Mr., Ms., Mrs.)<br>William Smart | | TELEPHONE NUMBER (Include Area Code) |
|---|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP | DATE OF BIRTH |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br><br>The Phoenix Group; Phoenix Lithographing Corporation; High Road Press; Phoenix Veterans Print; Innovation Marketing Communications; Barry Green | NUMBER OF EMPLOYEES, MEMBERS<br><br>>15 | TELEPHONE (Include Area Code)<br><br>(215) 698-9000 |
|---|---|---|

| STREET ADDRESS<br><br>(All Respondents)<br><br>11631 Caroline Road | CITY, STATE AND ZIP<br><br><br><br>Philadelphia, PA 19154 | COUNTY<br>Philadelphia |
|---|---|---|

| CAUSE OF DISCRIMINATION (Check appropriate box(es))<br>__ Race __ Color __ Sex __ National Origin<br>_X_ Retaliation __ Age _X_ Disability __ Other (Specify) | DATE DISCRIMINATION TOOK PLACE<br>Earliest                    Latest  August 20, 2019 |
|---|---|

## The Particulars Are:

A.    1.    Relevant Work History

I was collectively employed by Respondents, The Phoenix Group; Phoenix Lithographing Corporation; High Road Press; Phoenix Veterans Print; and Innovation Marketing Communications (collectively "Respondents"), from on or about September 5, 2018 until on or about August 20, 2019, the date of my termination. At all times material hereto, I held the position of Vice President of New Business Development for Respondents.

During my employment with Respondents, I reported to Barry Green ("Respondent Green"), Owner and Chief Executive Officer of Respondents. At all times relevant hereto, I was a dedicated employee for Respondents and performed my job duties in an exceptional manner.

I suffer from an ongoing strain of cancer (Squamous Cell Carcinoma). This medical condition constitutes a disability within the meaning of the Americans with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practice Ordinance ("PFPO"), in that it substantially impairs one or more of my major life activities.

1

2.    Harm Summary

I believe that Respondents discriminated against me based upon my disability and retaliated against me for requesting reasonable accommodations in connection with the same, culminating in the termination of my employment. Evidence of Respondents' discriminatory and retaliatory conduct includes, but is not limited to, the following:

a)  On or about September 5, 2018, I entered into an employment contract with Respondents to serve as their Vice President of New Business Development. The employment contract guaranteed me a salary of $1,000,000 for my first three years of employment with Respondents.

b)  In or about April of 2019, I was diagnosed with Squamous Cell Carcinoma Cancer.

c)  In or about late May of 2019, I informed Respondent Green and Steve Anello ("Anello"), Respondents' Vice Chairman, of my cancer diagnosis. During that meeting, I informed them that I would be undergoing surgery (tracheostomy) in June 2019 and would require, as a reasonable accommodation, time off from work thereafter to recover.

d)  On or about June 10, 2019, I underwent tracheostomy surgery as part of my cancer treatment. On June 11, 2019, due to surgery-related complications, I underwent a second (and emergency) surgery on my throat due to a post-operative hemorrhage. I remained in the hospital for another eight (8) days to recover. Due to the severe and invasive nature of the surgery, I needed a feeding tube in order to eat for several weeks.

e)  I returned to work from surgery in July 2019.

f)  Thereafter and continuing until the termination of my employment, Respondents, including Respondent Green, engaged in a pattern of discrimination and retaliation against me based on my disability and requests for reasonable accommodations.

g)  By way of example, when I returned to work, Respondent Green began harassing me about my compensation and informed me that I was a "financial drain" on the company. Respondent Green also began demanding that I volunteer to take a pay-cut.

h)  On or about July 31, 2019, I commenced proton radiation therapy as a form of continuing treatment for my cancer diagnosis. My radiation therapy regimen was for five (5) continuous weeks, with individual treatment sessions occurring five (5) days per week on weekdays. I scheduled the individual therapy sessions in the evenings in an effort to minimize interference with my work schedule for Respondents.

i)  At all times relevant hereto, Respondents were fully aware of my proton radiation therapy regimen.

j) In early August of 2019, just after I commenced proton radiation treatment, Respondent Green and Anello confronted me in hostile fashion, again told me I was a "financial drain" on the company, and falsely accused me of not hitting my sales goals. In this particular interaction, which occurred in the late afternoon on a Friday directly before one of my scheduled radiation treatments, Respondent Green and Anello's discriminatory harassment of me was so distressing that it caused me difficulty in breathing.

k) A few days later, I presented my sales figures and other evidence to Respondent Green to prove to him that despite my recent cancer diagnosis and its effect on my health, I was still meeting my sales goals for Respondents. Respondent Green largely ignored what I was saying and continued to insist that I take a pay-cut.

l) On or about August 9, 2019, Ken Marino ("Marino"), Respondents' President, abruptly informed me that I would need to consider a drastic reduction to my salary in order to remain employed by Respondents. Marino then specifically suggested a $600,000 pay decrease, which I told him I would not agree to.

m) On or about August 14, 2019, Marino informed me that I would need to come up with a proposal for management to reduce my salary in order to remain employed by Respondents. Marino again suggested that I propose a $400,000 salary, which was $600,000 less than what I was earning at that time. I told him I would not consider such a drastic reduction to my compensation.

n) On or about August 16, 2019, Respondent Green, Steve Anello ("Anello"), Vice Chairman, and Marino requested a meeting with me, during which they asked whether I had created a "proposal" to reduce my salary. I informed them I had not and was not considering it. I also informed them that I had a radiation treatment planned for later that day and excused myself from the meeting.

o) On or about August 19, 2019, Respondent Green, Anella, and Marino held another meeting with me during which they again asked me to make a proposal to reduce my salary. I informed them I would not do so.

p) The following day, on or about August 20, 2019, Marino approached me in my office with an ultimatum from Respondent Green: accept a $600,000 pay decrease to a salary of $400,000 and an involuntary reassignment of one of my biggest client accounts or be terminated. I informed Marino that I would not accept this discriminatory and retaliatory proposal. Marino then informed me that my employment was terminated, effective immediately.

q) Upon information and belief, Respondents replaced me with a non-disabled employee and/or disseminated my job duties and sales accounts to a non-disabled employee.

r) Respondent Green aided, abetted, incited, compelled and/or coerced the discrimination and retaliation to which I was subjected during my employment with Respondents.

B.  Respondents' Stated Reasons:

a)  Respondents have not provided any legitimate nondiscriminatory explanation for discriminating against me because of my disability.

b)  Respondents have not provided any legitimate nonretaliatory explanation for subjecting me to unlawful retaliation for requesting reasonable accommodations.

c)  Respondents have not provided any legitimate nondiscriminatory or nonretaliatory explanation for terminating my employment.

C.  Statutes and Basis for Allegations

I believe that Respondents, including Respondent Green, discriminated against me based on my disability, subjected me to disability-based hostile work environment, and retaliated against me based on my requests for reasonable accommodations, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Pennsylvania Human Relations Act, as amended 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO"), Philadelphia Code § 9-1100 *et seq.*, as set forth herein.

| X̲ I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | ~~NOTARY   (when necessary for State and Local Requirements)~~ |
|---|---|
| | ~~I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief.~~ |
| I declare under penalty or perjury that the foregoing is true and correct. | |
| *William J. Smart* | ~~SIGNATURE OF COMPLAINANT~~ |
| 2-13-20<br>Date:                              Charging Party *(Signature)* | ~~SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE~~<br>~~(Day Month, and year)~~ |

RECEIVED
20 FEB 14 PM 2:44
EEOC PHILADELPHIA
DISTRICT OFFICE

INFORMATION FOR COMPLAINANTS & ELECTION OPTION
TO DUAL FILE WITH THE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

**William Smart v. The Phoenix Group; Phoenix Lithographing Corporation; High Road Press; Phoenix Veterans Print; Innovation Marketing Communications; Barry Green**

EEOC No. _____

You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) under the Pennsylvania Human Relations Act. Filing your charge with PHRC protects your state rights, especially since there may be circumstances in which state and federal laws and procedures vary in a manner which would affect the outcome of your case.

Complaints filed with the PHRC must be filed within 180 days of the act(s) which you believe are unlawful discrimination. If PHRC determines that your PHRC complaint is untimely, it will be dismissed.

If you want your charge filed with the PHRC, including this form as part of your EEOC charge, with your signature under the verification below, will constitute filing with the PHRC. You have chosen EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept EEOC's finding. If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to file a request for preliminary hearing with PHRC.

Since you have chosen to file your charge first with EEOC, making it the primary investigatory agency, the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with PHRC after one year from filing with PHRC, you have the right to file your complaint in state court. PHRC will inform you of these rights and obligations at that time.
**[Sign and date appropriate request below]**

_X_ I want my charge filed with PHRC. I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint. I request EEOC to transmit it to PHRC.

_X_ *I understand that false statements in this complaint are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.*

X    _William J. Smart_    2 - /__ - 20__

Signature and Date (William Smart)

Exhibit "B"

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: **William Smart** | From: **Philadelphia District Office** |
|---|---|
| | **801 Market Street** |
| | **Suite 1000** |
| | **Philadelphia, PA 19107** |

| ☐ | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|
| EEOC Charge No. | EEOC Representative | Telephone No. |
| | **Legal Unit,** | |
| **530-2020-02955** | **Legal Technician** | **(267) 589-9707** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐    The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐    Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐    The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐    Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒    The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐    The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐    Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Jamie W. Williamson_      November 6, 2020

Enclosures(s)

**Jamie R. Williamson,**      (Date Mailed)
**District Director**

cc:    **Christina M. Michael**             **Brian C. Fareell, Esq.**
        **Fisher & Phillips LLP**              **CONSOLE MATTIACCI LAW, LLC**
        **150 N. Radnor Chester Rd**          **1525 Locust Street**
        **Suite C300**                      **9th Floor**
        **Radnor, PA 19087**               **Philadelphia, PA 19102**

Exhibit "C"

08/28/18

**Bill Smart / Phoenix Litho**

- Compensation Plan: Non recoverable Draw of $1 million minimum guaranteed for 3 years based on commission plan of 4% for gross on all sales plus a 50/50 split on upsell over estimate,

- Signing bonus (if walk away from significant commission $).

- 1% commission to be paid on sales from salespersons that I recruit

- Sales expense of 1% on gross sales base on min sales $4 million to start       2500/Month for 1st 3 months

- Auto allowance $1,500/month  1,000                                              Then 1%

- Phoenix plan health, dental, vision, life and disability plans

- Cobra coverage for gap

- Phoenix 401(k) savings retirement plan.

- Vacation 4 weeks

- Dedicated CSR team provided by Phoenix

- Legal support if Cenveo takes any action

Barry Green
Phoenix Litho

Date  9/5/18

Bill Smart

Date  9/5/18

Exhibit "D"

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | FEPA<br>_<br>**X**   EEOC | 530-2021-03177 |

| STATE OR LOCAL AGENCY: <u>Pennsylvania Human Relations Commission</u> | | |
|---|---|---|

| NAME (Indicate Mr., Ms., Mrs.)<br>**William Smart** | TELEPHONE NUMBER *(Include Area Code)*<br>(215) 545-7676 | |
|---|---|---|
| STREET ADDRESS<br>3 Englereth Lane | CITY, STATE AND ZIP<br>Downingtown, PA 19335 | DATE OF BIRTH<br>11/23/1959 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br><br>**The Phoenix Group; Phoenix Lithographing Corporation; Innovation Marketing Communications; Barry Green; Stephen Anello** | NUMBER OF EMPLOYEES, MEMBERS<br><br>>15 | TELEPHONE (Include Area Code)<br><br>(215) 698-9000 |
|---|---|---|

| STREET ADDRESS<br><br>**(All Respondents)**<br><br>**11631 Caroline Road** | CITY, STATE AND ZIP<br><br><br><br>**Philadelphia, PA 19154** | COUNTY<br>Philadelphia |
|---|---|---|

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>__ Race   __Color   __ Sex   __ National Origin<br>__X__ Retaliation   __Age   _ Disability   __Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br>*Earliest*              *Latest*   **April 12, 2021** |
|---|---|

### The Particulars Are:

A.      Relevant Work History

I was collectively employed by Respondents, The Phoenix Group; Phoenix Lithographing Corporation; and Innovation Marketing Communications (collectively "Respondent Phoenix"), from on or about September 5, 2018 until on or about August 20, 2019, the date of my termination. I held the position of Vice President of New Business Development for Respondent Phoenix. During my employment, I reported to Barry Green ("Respondent Green"), Owner and Chief Executive Officer of Respondent Phoenix.

After filing claims of disability discrimination and retaliation with the EEOC against Respondent Phoenix and Respondent Green for aiding and abetting, I filed a civil action against all Respondents in federal court. In response to my civil action complaint, Respondents (including Respondent Stephen Anello, Vice Chairman) filed a baseless counterclaim against me. Respondents' prosecution of this meritless counterclaim against me is retaliation for my prior complaints of Respondents' discriminatory and retaliatory conduct.

B.      Harm Summary

I have been further retaliated against because of complaints of discrimination and retaliation against Respondents. Evidence of this retaliatory conduct, includes, but is not limited to, the following:

1

a. On February 14, 2020, I filed a Charge of Discrimination with the EEOC (Charge No. 530-2020-02955) asserting claims of disability discrimination and retaliation against Respondents Phoenix and Green under the ADA, PHRA, and PFPO.

b. On November 6, 2020, the EEOC issued a Notice of Right to Sue related to my Charge of Discrimination.

c. On February 2, 2021, I filed a civil action complaint against Respondents in federal court asserting, among other claims, the discrimination and retaliation claims alleged in my Charge. (E.D. Pa.; Civ. No. 2:21-cv-00486-CDJ).

d. On April 12, 2021, Respondents filed their answer to my civil action complaint in federal court.

e. In their answer, Respondents asserted a baseless counterclaim against me for allegedly breaching my duty of loyalty to Respondent Phoenix.

f. Respondents' assertion of this counterclaim against me constitutes retaliation for my complaints of Respondent's discriminatory conduct and my prosecution of same.

g. Respondents' counterclaim is frivolous and filed in response to me asserting my protected statutory rights.

h. In filing this counterclaim against me, Respondents have sought to punish me for engaging in protected activity (*i.e.*, filing my first charge of discrimination and my subsequent federal court complaint) and to deter others from acting similarly.

i. Respondents' actions would cause reasonable people, like myself, who have had their civil rights violated, to be deterred from filing claims under the ADA, PHRA, and PFPO.

j. Respondents Green and Anello have aided, abetted, coerced, and/or incited the post-employment retaliation to which I have been subjected by Respondent Phoenix.

C.     Statutes and Bases for Allegations

I believe and aver that Respondents have engaged in post-employment retaliation against me based on my complaints of disability discrimination and retaliation related to same, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Pennsylvania Human Relations Act, as amended 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO"), Philadelphia Code § 9-1100 *et seq.*

| X  I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements) I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
|---|---|
| I declare under penalty or perjury that the foregoing is true and correct. | |
| Date: 04/23/2021     *William J Smart* Charging Party *(Signature)* | SIGNATURE OF COMPLAINANT SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day Month, and year) |

3

INFORMATION FOR COMPLAINANTS & ELECTION OPTION
TO DUAL FILE WITH THE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

**William Smart v. The Phoenix Group; Phoenix Lithographing Corporation; Innovation Marketing Communications; Barry Green; Stephen Anello**

EEOC No.   530-2021-03177

You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) under the Pennsylvania Human Relations Act.  Filing your charge with PHRC protects your state rights, especially since there may be circumstances in which state and federal laws and procedures vary in a manner which would affect the outcome of your case.

Complaints filed with the PHRC must be filed within 180 days of the act(s) which you believe are unlawful discrimination.  If PHRC determines that your PHRC complaint is untimely, it will be dismissed.

If you want your charge filed with the PHRC, including this form as part of your EEOC charge, with your signature under the verification below, will constitute filing with the PHRC.  You have chosen EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept EEOC's finding.  If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to file a request for preliminary hearing with PHRC.

Since you have chosen to file your charge first with EEOC, making it the primary investigatory agency, the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with PHRC after one year from filing with PHRC, you have the right to file your complaint in state court.  PHRC will inform you of these rights and obligations at that time.
**[Sign and date appropriate request below]**

 X   I want my charge filed with PHRC.  I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint.  I request EEOC to transmit it to PHRC.

 X     *I understand that false statements in this complaint are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.*

X _William J. Smart_   04/25/2021

Signature and Date (William Smart)

Exhibit "E"

EEOC Form 161 (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: **William Smart**

Downingtown, PA 19335

From: **Philadelphia District Office**
**801 Market Street**
**Suite 1000**
**Philadelphia, PA 19107**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | **Legal Unit,** | |
| **530-2021-03177** | **Legal Technician** | **(267) 589-9707** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

|   | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
|   | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
|   | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
|   | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
|   | The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. |
|   | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| **X** | Other *(briefly state)*     **No Jurisdiction - No employee/employer relationship at the time of the alleged adverse action.** |

**- NOTICE OF SUIT RIGHTS -**
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Dana R. Hutter*

**May 20, 2021**

Enclosures(s)

Dana R. Hutter,
**Deputy Director**

*(Date Issued)*

cc: **PHOENIX LITHOGRAPHING CORPORATION**
**Barbara J. Cohan, Esq. (for Respondent)**
**General Counsel**
**11631 Caroline Road**
**Philadelphia, PA 19154**

**Brian C Farrell, Esq. (for Charging Party)**
**CONSOLE MATTIACCI LAW, LLC**
**1525 Locust Street, 9th Floor**
**Philadelphia, PA 19102**