IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM SMART,<br><br>    Plaintiff,<br><br>    v.<br><br>PHOENIX LITHOGRAPHING CORPORATION, et al.,<br><br>    Defendants. | CIVIL ACTION<br><br>NO. 21-486-KSM |

MEMORANDUM

MARSTON, J.                                                                                         August 10, 2022

        Plaintiff William Smart, formerly employed by Phoenix Lithographing Corporation ("Phoenix"), sues Defendants Phoenix, The Phoenix Group, and Innovation Marketing Corporation, LLC (the "Corporate Defendants") and Barry Green and Stephen Anello (the "Individual Defendants") (collectively, "Defendants"). In his original complaint, Smart brought claims against the Corporate Defendants for disparate treatment and retaliation under the Americans with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO") (Counts I, II, and IV), as well as state law claims for breach of contract and fraudulent and negligent misrepresentation and concealment (Counts VI–VIII). (Doc. No. 1.) Smart also asserted aiding and abetting claims against Green under the PHRA and PFPO (Counts III and V), and a claim for violations of Pennsylvania Wage Payment and Collection Law ("WPCL") against all Defendants (Count IX). (*Id.*)

        In its Answer, Phoenix filed a counterclaim against Smart for breach of his fiduciary duty and duty of loyalty to Phoenix (the "Counterclaim"). (Doc. No. 8 at 30–35.) Subsequently,

Smart filed an Amended Complaint, which added ADA, PHRA, and PFPO retaliation claims against the Corporate Defendants based on the Counterclaim. (Doc. No. 18 at 19–20 (Counts II, IV, and VII).) Smart alleged that the Counterclaim is "baseless" and "frivolous" and "constitute[d] retaliation for Plaintiff's complaints of Defendants' discriminatory conduct and his prosecution of same." (*Id.* at ¶¶ 111, 114, 127, 130, 151, 154.) In his Amended Complaint, Smart also added PHRA and PFPO aiding and abetting claims against Anello. (*See id.* at 22, 24.)

Defendants move to dismiss the newly added ADA, PHRA, and PFPO retaliation claims, arguing that the Counterclaim was compulsory and Smart failed to plead facts to plausibly show that it was objectively baseless and, therefore, the Counterclaim was not an adverse action. (Doc. No. 20-1.) In their motion to dismiss, Defendants also contend that the aiding and abetting claims against Anello should be dismissed because Smart failed to exhaust his administrative remedies. (*Id.*) Smart opposes the motion. (Doc. No. 22.)

For the reasons discussed below, the Court grants Defendants' motion.

**I.  Background**

***A.  Smart Works for Phoenix, is Diagnosed with Cancer, and is Later Fired***

Accepting all allegations in the Amended Complaint as true, the relevant facts are as follows.

Phoenix is a collection of commercial printing companies that produces commercial printing products for various companies in the pharmaceutical, telecommunications, arts, and retail industries. (Doc. No. 18 at ¶ 26.) In 2018, Phoenix recruited Smart to join Phoenix as a commercial printing sales executive. (*Id.* at ¶¶ 27, 31.) Phoenix and Smart executed an

employment contract on September 5, which provided for an annual salary of $1 million,[1] and Smart began work on October 1. (*Id.* at ¶¶ 46–48.) Smart held the position of Vice President of Business Development and reported to Green, the CEO of Corporate Defendants. (*Id.* at ¶¶ 52–53.)

In April 2019, Smart was diagnosed with squamous cell carcinoma cancer of the head and neck. (*Id.* at ¶ 54.) During a meeting with Green and Anello (the Vice Chairman of Phoenix), Smart informed them that in June, he would be undergoing a series of complex surgeries to remove his tumors and reconstruct his throat and he would need time off to recover. (*Id.* at ¶ 56.) On June 10, Smart underwent those surgeries and the next day he underwent an emergency surgery on his throat due to a post-operative hemorrhage. (*Id.* at ¶¶ 57–58.)

Smart returned to work in July 2019. (*Id.* at ¶ 59.) According to Smart, upon his return to work, Defendants began discriminating against him due to his disability. (*Id.* at ¶ 60.) Specifically, on July 31, Smart began proton radiation therapy and the treatment sessions were scheduled five days a week, in the evenings. (*Id.* at ¶ 62.) Green persisted in scheduling meetings at the end of the day, despite Smart's specific request that he schedule them earlier; these meetings "often interfered" with Smart's radiation treatments. (*Id.* at ¶ 64.) And in early August, directly before one of Smart's treatments, Green and Anello called Smart a "financial drain" on the company, falsely accused him of not hitting his sales goals, and demanded Smart agree to reduce his compensation. (*Id.* at ¶ 65.) On August 9, Ken Marino, the President of

---

[1] Green and Smart negotiated the terms of the contract. (*See id.* at ¶¶ 33–47.) Under the contract, Smart was guaranteed a three-year term of employment and a compensation rate of $1 million per year. (*Id.* at ¶ 44.) In addition, Smart was to be paid a signing bonus "commensurate with any commission" he would be required to forego by virtue of leaving his former company. (*Id.* at ¶ 45.) Smart was also to earn a one-percent commission on all sales generated by salespersons recruited by Smart to join Phoenix. (*Id.*) In his Amended Complaint, Smart alleges that Green made false representations during contract negotiations concerning the status of Phoenix's Comcast account. (Id. at ¶¶ 49–50.)

Phoenix, said that Smart could "no longer ignore" the demand that he reduce his compensation and suggested a $600,000 pay decrease (i.e., a yearly compensation of $400,000).  (*Id.* at ¶ 67.)  Smart refused.  (*Id.*)  Five days later, on August 14, Marino told Smart he needed to reduce his salary to remain employed by Phoenix and informed Smart that Green was "offering $333,000" per year but thought that if Smart "cooperated," Marino could "talk [Green] into" $400,000 per year.  (*Id.* at ¶ 68.)  Smart again refused to such a drastic pay cut.  (*Id.*)

On August 16, Green, Anello, and Marino met with Smart and continued to insist that he voluntarily accept a reduction in pay, notwithstanding the documentation Smart showed them that "indicated he had actually established a higher sales profit margin than originally anticipated during his first year of employment and was, despite his cancer diagnosis, still performing at a very high level."  (*Id.* at ¶ 69.)  On August 19, Green, Anello, and Marino held another meeting, again demanding that Smart make a proposal to reduce his salary; Smart refused.  (*Id.* at ¶ 70.)  The next day, Marino delivered Smart an ultimatum from Green: "accept a $600,00 pay decrease . . . and an involuntary reassignment of one of [Smart's] largest client accounts, or face termination."  (*Id.* at ¶ 71.)  Smart would not accept the pay decrease and Marino terminated his employment, effective immediately.  (*Id.*)  "Due to his weakened physical condition caused by ongoing radiation treatment," Smart asked two other employees to help him carry his belongings from his office to his car; once Green witnessed this, he instructed those employees to stop helping Smart.  (*Id.* at ¶ 72.)

### B.  *Smart Initiates this Lawsuit Against Defendants*

On February 14, 2020, Smart dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") against Phoenix, Phoenix Lithographing Corporation, High Road Press,

Phoenix Veterans Print, Innovation Marketing Communications, and Green.[2] (Doc. No. 18 at ¶ 21; *see also id.*, Ex. A at 33–26.) The EEOC dismissed the Charge and issued Smart a notice of his right to sue. (*Id.* at ¶ 22; *see also id.*, Ex. B.) On February 2, 2021, Smart filed his original Complaint. (Doc. No. 1.) As noted *supra*, Smart asserted claims against the Corporate Defendants for disparate treatment and retaliation under the ADA, the PHRA, and the PFPO, as well as state law claims for breach of contract and fraudulent and negligent misrepresentation and concealment. (*Id.*) He also brought aiding and abetting discrimination and retaliation claims against Green under the PHRA and PFPO and a claim for violations of the WPCL against all Defendants. (*Id.*)

### C.  *Phoenix Files a Counterclaim*

On April 12, 2021, Defendants filed their Answer. (Doc. No. 8.) Simultaneously, Phoenix brought a counterclaim against Smart, alleging that Smart breached his fiduciary duty and duty of loyalty toward Phoenix. (*Id.* at 30–35, ¶¶ 32–39.) Specifically, Phoenix alleged that in July 2019, Anello learned that Smart was sending printing jobs to commercial printing companies other than Phoenix. (*Id.* at ¶ 25.) According to Phoenix, Anello discovered that Smart sent "a large printing job for a consumer products company to a competitor of Phoenix . . . and did not run any part of the printing job through Phoenix, as he was obligated to do" in his role as Vice President of New Business Development. (*Id.* at ¶ 26; *see also id.* (alleging that this was the type of job that Phoenix performs and "would have performed had Smart brought the opportunity to Phoenix").) Phoenix alleged that Anello confronted Smart, and Smart did not deny sending the job to Phoenix's competitor; rather, Smart allegedly claimed that his employment contract with Phoenix did not prevent him from sending printing business to

---

[2] Smart did not name Anello as a Respondent in the first Charge. (*See also* Doc. No. 18, Ex. A at 33.)

5

another company either directly or through his wife.  (*Id.* at ¶ 27.)

On May 3, Smart filed his Answer to the Counterclaim.  (Doc. No. 9.)  Smart denied that he breached any fiduciary duty.  (*See, e.g.*, *id.* at ¶¶ 33–39.)

### D.  *Smart Files Another Charge with the EEOC and Amends His Complaint*

Shortly after Phoenix filed its Counterclaim, on April 26, Smart filed a second Charge of Discrimination with the EEOC and the PHRC against the Corporate Defendants, Green, and Anello.  (Doc. No. 18, Ex. D at 43–45.)  In the Second Charge, Smart alleged that Defendants' filing of the counterclaim was retaliatory and done solely to "punish [him] for engaging in protected activity (i.e., filing [his] first charge of discrimination and [the] subsequent federal court complaint))."  (*Id.* at 44.)

On May 20, the EEOC dismissed the Second Charge and issued a right to sue letter.  (*Id.*, Ex. E at 48.)  Smart then moved for leave to amend his original complaint to add claims for unlawful retaliation based on the Counterclaim.  (Doc. No. 14.)  Defendants did not oppose the motion, and the Court granted Smart leave to amend.  (Doc. Nos. 16–17.)  On July 26, 2021, Smart filed his Amended Complaint.  (Doc. No. 18.)

As noted *supra*, Smart amended his complaint to include aiding and abetting claims against Anello under the PHRA and PFPO and added ADA, PHRA, and PFPO retaliation claims against the Corporate Defendants based on the Counterclaim.  (*See id.*)  Presently before the Court is Defendants' motion to dismiss those added claims.  (Doc. No. 20.)  Smart opposes the motion.[3]  (Doc. No. 22.)

---

[3] On September 7, 2021, Defendants filed a motion for leave to file a reply brief.  (Doc. No. 23.)  On November 21, 2021, Smart died (*see* Doc. No. 26 (Suggestion of Death)), and the Court stayed the case pending substitution of Smart's estate as the proper party and directed the Clerk of Court to place the case into suspense (Doc. No. 29).  On January 28, 2022, Smart's estate filed a motion to substitute proper party (Doc. No. 30), which the Court granted on February 4 (Doc. No. 31).  On June 21, 2022, this case was reassigned from the Honorable C. Darnell Jones, II to the Honorable Karen Spencer Marston.  (Doc. No.

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the non-moving party's complaint. *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017). However, the Court need not "accept . . . a legal conclusion couched as a factual allegation." *Id.* (quotation marks omitted). To state a claim for relief, the plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III. Discussion

First, Defendants argue that Smart's newly added retaliation claims against the Corporate Defendants under the ADA, the PHRA, and the PFPO should be dismissed because Smart has not suffered an adverse employment action. Second, Defendants argue that Smart's aiding and abetting claims against Anello must be dismissed because Smart did not administratively exhaust his remedies as to Anello. We address each in turn.

### A. Retaliation Claims

A plaintiff bringing an employment retaliation claim must plead that he: (1) engaged in a protected activity, (2) suffered an adverse employment action, and (3) a causal connection

---

32.) On June 24, the Court removed this case from suspense and granted Defendants' motion for leave to file a reply. (Doc. No. 33.) On July 8, Defendants filed their reply. (Doc. No. 36.)

existed between the protected activity and the adverse action. *Feliciano v. Coca-Cola Refreshments USA, Inc.*, 281 F. Supp. 3d 585, 592 (E.D. Pa. 2017). It is undisputed that Smart engaged in protected activity when he filed a Charge of Discrimination against Defendants and when he filed his subsequent lawsuit. However, the Corporate Defendants argue that the Counterclaim did not constitute an adverse action because it was compulsory and because Smart has not sufficiently pleaded that the Counterclaim was objectively baseless. We agree.

Under *Burlington Northern & Santa Fe Railway Co. v. White*, a plaintiff bringing a retaliation claim "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." 548 U.S. 53, 68 (2006). "[C]ourts are split on whether filing a counterclaim is an adverse action." *Berrada v. Cohen*, 792 F. App'x 158, 164 (3d Cir. 2019). However, some district courts within this Circuit have held that "the filing of a counterclaim by an employer could dissuade a reasonable worker from engaging in protected activity, thus constituting unlawful retaliation." *Romero v. Allstate Ins. Co.*, No. 01-3894, 2016 WL 3654265, at *11–12 (E.D. Pa. July 6, 2016); *see also Brown v. T.D. Bank, N.A.*, Civil Action No. 15-5474, 2016 WL 1298973, at *7 (E.D. Pa. Apr. 4, 2016) ("[O]ther courts have found that the filing of a counterclaim by an employer might well ground a retaliation claim, since an employee might choose to withdraw her charges of discrimination rather than face counterclaims which directly attack the integrity of the plaintiff." (cleaned up) (collecting cases)).

Even assuming for the purposes of this motion that a counterclaim is an adverse action, Smart's retaliation claims must nonetheless be dismissed. As the Third Circuit has noted, "[c]ourts holding that a counterclaim can be an adverse action require that the counterclaim be

baseless." *Berrada*, 792 F. App'x at 164. *Accord Pawlowski v. Kitchen Expressions Inc.*, 19-CV-7052 (PKC) (RML), 2017 WL 10259773, at *5 (E.D.N.Y. Dec. 15, 2017) ("A counterclaim cannot, however, constitute an adverse employment action unless it is frivolous.  When the counterclaim has merit, it is not an adverse employment action.  In other words, only if a counterclaim is baseless can it constitute retaliation under employment law.").  "Even if [a] counterclaim[] ultimately lacks merit, that does not mean [it is] 'baseless.'" *Berrada v. Cohen*, Civil Action No. 16-574 (SDW)(LDW), 2017 WL 1496930, at *6 (D.N.J. Apr. 24, 2017), *aff'd*, 792 F. App'x 158 (3d Cir. 2019).  Rather, "[c]ourts applying the 'baseless' standard have defined baseless as akin to 'frivolous (and therefore sanctionable).'" *Id.* (citations omitted); *see also* Black's Law Dictionary (11th ed. 2019) (defining "baseless" as "having no basis in fact or sound reason; without any foundation or support; groundless").

To plead that a counterclaim is baseless, a plaintiff must do more than merely contest the factual allegations underlying the counterclaim or the merits of the counterclaim.  *See, e.g.*, *Berrada*, 2017 WL 1496930, at *6 (denying the plaintiff's motion to amend the complaint to add a retaliation claim based on the defendant's counterclaims as futile where the plaintiff's proposed amended complaint merely "contest[ed] the facts underlying the counterclaims" but did not plead "that they are frivolous or sanctionable" and "the allegations in plaintiff's [proposed amended complaint] provided no basis to conclude that [the] counterclaims [were] baseless").  Rather, for a retaliation claim to survive the motion to dismiss stage where the employer's counterclaim is alleged to be the adverse action, a plaintiff must plead facts from which the court can reasonably infer that the counterclaim is objectively baseless.  *See Romero*, 2016 WL 3654265, at *13 (determining whether "the plaintiffs plead[ed] facts from which [the court] can reasonably infer [the defendant's] counterclaims are objectively baseless, made in bad faith [sic] brought with a

9

retaliatory motive"); *see also Sharqawi v. Kirby Co.*, Case No. 1:20cv00271, 2022 WL 1227327, at *6 (N.D. Ohio Apr. 26, 2022) ("[T]here must . . . be some factual allegation that the compulsory counterclaim was baseless or pursued in bad faith."); *Viera*, 2021 WL 396687, at *12 ("[A] plaintiff must allege sufficient facts to raise a reasonable expectation that [discovery] will show that the defendant's counterclaims were baseless, brought with a retaliatory motive and lack[] a reasonable basis in law and fact." (cleaned up)); *Morrissey v. CCS Servs., PLLC*, Case No. 19-cv-13027, 2020 WL 5878214 at *4 (E.D. Mich. Oct. 2, 2020) ("To sufficiently allege that a counterclaim is an adverse action in a FLSA retaliation claim, a Plaintiff must put forth facts that the counterclaims were either baseless, frivolous, or in bad faith with retaliatory motivation."); *Warner v. Sims Metal Mgmt.*, No. C 13-02190 WHA, 2013 WL 4777314, at *2 (N.D. Cal. Sept. 6, 2013) ("Plaintiff must explain the reason that defendant's counterclaims are baseless with specific factual allegations."). Smart has not done so here.

For example, in *Morrisey*, the plaintiff sued her former employer, alleging overtime violations of the Fair Labor Standards Act ("FLSA"), and in an amended answer, the defendants brought three counterclaims against the plaintiff. 2020 WL 5878214, at *1. The plaintiff then amended her complaint to include a FLSA retaliation claim based on the defendants filing of the counterclaims. *Id.* The court granted the defendants' motion to dismiss because the plaintiff claimed that the defendants were "motivated to file counterclaims by Plaintiff's filing of the lawsuit" and that the counterclaims were "filed in retaliation of plaintiff exercising her legally protected right," but offered no facts to support these conclusory assertions. *Id.* at *4; *see also Sharqawi*, 2022 WL 1227327, at *6 (granting motion to dismiss where the plaintiff alleged that a compulsory counterclaim filed by the defendant was retaliatory because the complaint did "not include factual assertions sufficient to allege that the counterclaim is baseless or was initiated in

bad faith").

In contrast, in *Romero*, the court denied the defendant-employer, Allstate's, motion to dismiss a retaliation claim based on counterclaims because the plaintiffs pleaded facts from which the court could reasonably infer that the counterclaims were baseless. 2016 WL 3654265, at *13–14. There, Allstate brought counterclaims for breach of the covenant of good faith and fair dealing, unjust enrichment, negligent misrepresentation, and fraud. *Id.* at *11. "Each of the[] counterclaims plead[ed] the [plaintiff-employees] entered into [a] Release intending to breach the Release by suing Allstate." *Id.* In a consolidated complaint, the plaintiff added retaliation claims based on the counterclaims, alleging that the counterclaims were baseless because: "the language of the Release did not contain any promise not to sue Allstate"; representations Allstate's attorneys made to the EEOC in May 2000 showed that Allstate knew all along that it could not satisfy critical elements of the counterclaims; Allstate knew "that it could not possibly prove detrimental reliance under circumstances when it decided to proceed with the Program in the face of the EEOC's determination that the Release was invalid and request to suspend the Release requirement"; and Allstate ultimately requested leave to amend its counterclaims to withdraw three of the four counterclaims once threatened with sanctions. *Id.* at *13–14. Based on these specific allegations, the court found that the plaintiffs sufficiently pleaded that the counterclaims were objectively baseless. *Id.* at *14.

This case is akin to *Morrisey* and distinguishable from *Romero*. As to each of his three retaliation claims, Smart pleads the following:

- In their answer, Defendants asserted a baseless counterclaim against Plaintiff for an alleged breach of fiduciary duty/ duty of loyalty.

- Defendants' counterclaim rests on the unfounded allegation that Plaintiff "acted in direct competition" with Defendants' business by diverting a "large printing job for a consumer products company to a competitor of Phoenix."

11

- Defendants' allegations against Plaintiff are false.

- Defendants filed the counterclaim against Plaintiff in bad faith.

- Plaintiff never acted "in direct competition" with Defendants; nor did he wrongfully divert business from Phoenix to a competitor.

- Defendants' assertion of this counterclaim against Plaintiff constitutes retaliation for Plaintiff's complaints of Defendants' discriminatory conduct and his prosecution of same.

- Defendants' counterclaim is frivolous and filed as a sole result of Plaintiff's assertion of his protected statutory rights.

- Defendants asserted this counterclaim against Plaintiff to retaliate against and punish him for having engaged in protected activity under the ADA, PHRA, and PFPO.

- Defendants' actions would cause reasonable people, like Plaintiff, who have had their civil rights violated, to be deterred from filing claims under the ADA, PHRA, and PFPO.

(Doc. No. 18 at ¶¶ 92–100; *see also id.* at ¶¶ 111–16, 127–32, 151–56.)  But most of these allegations, such as Smart's claim that Defendants' account of the facts is "false" and "unfounded," amount to mere denials of Defendants' allegations; yet Smart fails to provide any factual support for his denials.  And the rest of Smart's allegations are *legal* conclusions which the Court must disregard when deciding a motion to dismiss.  As just one example, Smart's statement that "Defendants asserted a baseless counterclaim against Plaintiff" is not a well-pleaded factual allegation which the Court is required to accept as true.  The same is true of the allegations that Defendants' counterclaim is "frivolous" and that Defendants filed it in "bad faith."  Searching the entirety of Smart's First Amended Complaint, the Court is unable to discover *any* non-conclusory factual allegations which make it plausible that the Counterclaim was baseless.  This is fatal to Smart's ADA, PHRA, and PFPO retaliation claims.[4]  *See Morrisey*,

---

[4] Defendants argue that because Smart has "repeatedly admitted to the key facts underlying the Counterclaim—namely that he sent at least some business to a competitor while employed by Phoenix," it

12

2020 WL 5878214, at *1; *see also Warner*, 2013 WL 4777314, at *2 ("Plaintiff's counterclaim in reply [to the defendant's counterclaim] includes wholly conclusory statements, such as 'none of defendant's accusations have merit.' . . . Vague uses of weasel phases such as 'completely without merit' . . . will not defeat a motion to dismiss for failure to state a claim." (cleaned up)). *Contra Romero*, 2016 WL 3654265, at *13–14.

In addition, we note that the Third Circuit considered the compulsory nature of a counterclaim in holding that a retaliation claim based on a counterclaim fails to state a claim, albeit in a non-precedential opinion. *See Berrada*, 792 F. App'x at 164. In *Berrada*, the district court denied the plaintiff's motion to amend to add a FLSA retaliation claim based on the defendant's counterclaims, finding that the proposed claim was futile. The Third Circuit affirmed, and one of its reasons was that "the counterclaims were compulsory, and there is nothing suspicious about Defendants' counterclaims when the Rules required Defendants to assert them or risk waiving them." *Id.* *Contra Viera*, 2021 WL 396687, at *13–15 (denying motion to dismiss retaliation claim where the plaintiff pleaded facts to plausibly allege that the defendants acted with retaliatory motive and where the counterclaim was permissive in nature).

Here, Smart does not challenge Defendants' assertion that the Counterclaim was compulsory. And, in any event, the Court agrees that the Counterclaim is compulsory. As in

---

follows that the Counterclaim cannot be baseless. (*See* Doc. No. 36 at 5; *see also* Doc. No. 20-1 at 11 ("In the instant matter, Plaintiff has done nothing to 'disprove the challenged lawsuit's objective legal viability. To the contrary, Plaintiff has provided the Court with at least one example of his directing a printing transaction to a company other than Phoenix."); *id.* at 4 (stating that in "prior representations to the Court," Smart has acknowledged that "he facilitated a commercial printing transaction for his wife's business").) However, when deciding a motion to dismiss for failure to state a claim, we may consider only the allegations in the Amended Complaint and any documents attached thereto or that are integral to or relied upon in the Amended Complaint. *See, e.g.*, *Berrada*, 2017 WL 1496930, at *2 ("In evaluating a claim under the Rule 12(b)(6) standard, 'courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint,' and 'matters of public record of which the court can take judicial notice.'" (citation omitted)). And Defendants do not point us to any allegations in the Amended Complaint or the attached exhibits in which Smart admitted to sending printing jobs to other companies.

*Berrada*, the Court finds that compulsory nature of the counterclaim weighs against finding that the Counterclaim is baseless.

For these reasons, the Court finds that Smart has failed to plead that Smart suffered an adverse reaction for purposes of a retaliation claim, as he has not pleaded that the Corporate Defendants' breach of fiduciary duty counterclaim is objectively baseless. Therefore, dismissal is warranted on Smart's ADA, PHRA, and PFPO retaliation claims.

### B. *Aiding and Abetting Claims Against Anello*

Defendants also move to dismiss the aiding and abetting claims against Anello, arguing that Smart failed to exhaust his administrative remedies as to Anello. Anello was not named in in the first Charge filed with the EEOC. (*See* Doc. No. 18, Ex. A at 33.) However, Anello was named in the second Charge that alleged retaliation based on Defendants' Counterclaim (*see id.*, Ex. D at 43), and in his response, Smart clarifies that he is only bringing the aiding and abetting claims against Anello concerning the retaliation claims (*not* the discrimination claims alleged in the original Complaint). (*See* Doc. No. 22 at 20.) Therefore, Defendants' administrative exhaustion argument is moot.

Nonetheless, because Smart admits that the aiding and abetting claims are premised solely on the newly added retaliation claims, and for the reasons discussed above, the Court dismisses the retaliation claims for failure to state a claim, it follows that the aiding and abetting claims against Anello must also be dismissed.

### IV. Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss the ADA, PHRA, and PFPO retaliation claims against the Corporate Defendants (Counts II, IV, and VII) and the aiding and abetting claims brought against Anello (Counts V and VIII). This dismissal is

without prejudice.

An appropriate Order follows.